# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAPHAEL HEIFETZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) |
| SIKA CORPORATION, | ) **JURY TRIAL REQUESTED** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

OF COUNSEL:

Donald R. Dunner
Darrel C. Karl
Daniel G. Chung
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
Washington, DC  20001-4413
Tel:  (202) 408-4000

Dated:  September 13, 2017

John E. Flaherty
Guillermo C. Artiles
Ravin R. Patel
Aya Cieslak-Tochigi
MCCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Tel:  (973) 622-4444
jflaherty@mccarter.com
gartiles@mccarter.com
rpatel@mccarter.com
acieslaktochigi@mccarter.com

*Attorneys for Plaintiff*
*Raphael Heifetz*

Plaintiff Raphael Heifetz, by its undersigned counsel, brings this action for patent infringement against defendant Sika Corporation and alleges as follows:

## PARTIES

1. Raphael Heifetz is an Israeli citizen with a residence at 13 Feinberg Street (the Dome House), Hadera, Israel 3821801.

2. On information and belief, Sika Corporation is a corporation organized under the laws of the State of New Jersey with a principal place of business at 201 Polito Avenue, Lyndhurst, NJ 07071.

## BACKGROUND

3. On information and belief, Sika Corporation manufactures waterproofing membranes for a variety of applications, including for use on construction surfaces such as roofs, basements, decks, and tunnels.

4. On information and belief, Sika Corporation sells and/or offers for sale waterproofing membranes in New Jersey and elsewhere in the United States.

5. On information and belief, Sika Corporation manufactures waterproofing membranes in at least Canton, Massachusetts.

6. On information and belief, Sika Corporation is authorized to do business, is doing business, and/or has a regular and established place of business in this judicial district, is incorporated in New Jersey, and has committed acts of infringement in this District.

7. On information and belief, Sika Corporation is a wholly-owned subsidiary of Sika AG, a Swiss company with a principal place of business at Zugerstrasse 50, Baar, Switzerland 6341.

8.	On information and belief, prior to January 1, 2008, Sika Sarnafil, Inc. was a Massachusetts company with a principal place of business at Canton Commerce Center, 100 Dan Road, Canton, Massachusetts 02021.

9.	On information and belief, between at least February 15, 2007 and January 1, 2008, Sika Sarnafil, Inc. was a wholly-owned subsidiary of Sika AG, a Swiss company with a principal place of business at Zugerstrasse 50, Baar, Switzerland 6341.

10.	On information and belief, on January 1, 2008, Sika Sarnafil, Inc. merged into Sika Corporation.

## JURISDICTION AND VENUE

11.	This patent infringement action arises under the patent laws of the United States of America, 35 U.S.C. § 101 *et seq*.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

12.	This Court has personal jurisdiction over the defendant based on the above allegations.

13.	Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) based on the above allegations.

## THE PATENT-IN-SUIT

14.	On July 1, 2003, United States Patent No. 6,586,080 ("the 080 patent") was duly and legally issued to Raphael Heifetz for an invention entitled "Sealing Sheet Assembly For Construction Surfaces And Methods Of Making And Applying Same"), and since that date Raphael Heifetz has been and still is the owner of the '080 patent.  A copy of the '080 patent is attached hereto as Exhibit A.

## DEFENDANT'S INFRINGEMENT OF THE PATENT-IN-SUIT

15. Since at least 2010, the defendant has been and still is infringing the ' 080 patent directly by making, selling, offering for sale and using in the United States sealing sheet units, specifically the defendant's Sarnafil® G476 SA membrane products, that embody the patented invention of at least claim 37 of the '080 patent.

16. Claim 34 of the '080 patent recites:

A multilayer unit for bonding onto a surface of a construction and thereby sealing the surface of the construction comprising:

(a) an upper sealing flexible layer having at least it's outer part protected against chemical and physical environmental influence; and

(b) a lower layer bonded to said upper layer, said lower layer being elastic, closed cell, foamed polymeric material having a module of elasticity significantly lower than that of the upper layer, said material having an elongation at break of at least 25% in a designated temperature range, and a gas volume in a range of 65% to 99% of it's total volume;

wherein if said upper layer is thermoplastic or thermosetic, and further wherein if said lower layer has a thickness of above about 2 mm, or if said upper layer is of bitumen, then, said upper and lower layers are selected such that if said tensile strength of said upper layer, according to it's definition in ASTM Standard D-751, method A, is expressed in units of Newton per 50 mm width, and said tensile strength of said lower layer, according to it's definition in Din Standard 53571, is expressed in units of Newton per 1 mm squared, then, the ratio between said tensile strength of said upper layer and said tensile strength of said lower layer is greater than 200, whereas, if said upper layer is thermoplastic or thermosetic, and further wherein if said lower layer has a thickness of below 2 mm, then, said lower and upper layers are selected such that a ratio of said tensile strengths of said upper and lower layers, when expressed in said units, respectively, is greater than 1000.

17. Claim 37 of the '080 patent recites:

A sealing unit according to claim 34, wherein said lower layer having a module of elasticity of no more than 50% of that of the upper sheet.

18. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product is "a self-adhered composite sheet consisting of a reinforced thermoplastic waterproofing membrane and a foam backing coated with a pressure-sensitive adhesive that can be applied directly to a concrete substrate or other approved substrates."

4

19. According to Defendant's product data sheets, the areas of application for Sarnafil® G476 SA membrane product include roofs with ballast, plaza decks, green roofs, inverted roofs, balconies, and terraces.

20. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product is "[s]pecially compounded for sub-grade environments of constant dampness, high alkalinity, exposure to plant roofs, fungi, and bacterial organisms, as well as low levels of hydrostatic pressure included ponded water conditions."

21. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product has an "integral" fiberglass mat reinforcement for dimensional stability.

22. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product has heat welded seams for strength and security.

23. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product's "closed-cell foam backing acts a separation layer and an integral cushioning layer allowing the membrane to conform to minor irregularities in the substrate."

24. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product is a "120-mil (3.0 mm) thick composite sheet composed of a 60 mil (1.5 mm) thick Sarnafil G476 waterproofing membrane with an integral 60 mil (1.5 mm) closed-cell foam backing with a 2.5 inch (63.5 mm) selvedge on one side to accommodate heat welding of the seam."

25. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product "is made of high quality PVC resin, pigments, stabilizers, and additives incorporated and fused into a homogenous polymer matrix and then coated to both sides of a fiberglass carrier sheet."

26. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product's "foam backing is factory-coated with a pressure sensitive adhesive that is protected by a plastic release liner which is removed during installation."

27. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product has "[e]xcellent flexibility in cold temperatures."

28. According to Defendant's product data sheets, Sarnafil® G476 SA membrane product's closed-cell foam backing also "serves as a barrier protecting the waterproofing membrane from contaminents [sic] such as residual asphalt materials."

29. According to Defendant's product literature, Sarnafil® G476 SA membrane product's "pressure sensitive adhesive provides a tenacious bond between the membrane composite and substrate to mitigate potential water migration under the sheet."

30. On information and belief, defendant's Sarnafil® G476 SA membrane product's closed-cell foam backing has an elongation at break of at least 25% over the designated temperature range.

31. On information and belief, defendant's Sarnafil® G476 SA membrane product's closed-cell foam backing has a gas volume in a range of 65% to 99% of its total volume.

32. On information and belief, the ratio of the tensile strength of the reinforced thermoplastic waterproofing membrane in defendant's Sarnafil® G476 SA membrane product, according to its definition in ASTM Standard D-751, method A, expressed in units of Newton per 50 mm width, over the tensile strength of the closed-cell foam backing in defendant's Sarnafil® G476 SA membrane product, according to its definition in Din Standard 53571, expressed in units of Newton per 1 mm squared, is greater than 1000.

33. On information and belief, the closed-cell foam backing in defendant's Sarnafil® G476 SA membrane product has a module of elasticity of no more than 50% of the module of

6

elasticity of the reinforced thermoplastic waterproofing membrane in defendant's Sarnafil® G476 SA membrane product.

34. Defendant will continue to infringe the '080 patent unless enjoined by this Court.

**DEFENDANT'S WILLFUL INFRINGEMENT OF THE PATENT-IN-SUIT**

35. On information and belief, defendant's infringement of the '080 patent has been and continues to be knowing and willful.

36. Effective April 8, 1998, Raphael Heifetz, the General Manager of Y.S.M. for BUILDING, Inc., entered into a confidential non-disclosure agreement with Sika AG.

37. Effective April 20, 1998, Raphael Heifetz, the General Manager of Y.S.M. for BUILDING, Inc., entered into a confidential non-disclosure agreement with Sarnafil International AG.

38. On May 6, 1998, Mr. Heifetz made a confidential disclosure in a meeting lasting nearly four hours at Sarnafil International AG's headquarters in Sarnen, Switzerland, which included his philosophy behind the invention, a description of the most preferred embodiments of two pending patent applications with details and illustrations, copies of these two pending patent applications including claims, slides demonstrating membrane behavior above cracks, a discussion of reduction stress state principles, lab tests, samples, and sample from the pilot plant. Sarnafil International AG employees present at that meeting included Josef Marbach, Head of Business Area Roofing;, Hansjörg Dietschi, Head of R&D; Marcel Rieder, Regional Manager; and Hans-Jakob Strehler, Product Manager Business Area Civil Engineering.

39. Sarnafil International AG subsequently declined to manufacture or market the flexible waterproofing composite membrane with an integral foam backing that could be self-adhered directly to a concrete substrate or other approved substrates invented by Raphael Heifetz.

40. On May 7, 1998, Mr. Heifetz made a similar confidential disclosure in a meeting lasting three and a half or more hours to Silvio Ponti, the General Manager of Sika AG, in Zurich, Switzerland. Also present was J.M. Groh, Sika-Trocal's Head of R&D.

41. By a letter dated May 28, 1998, Silvio Ponti of Sika AG informed Raphael Heifetz "that for the time being we do not want to proceed in manufacturing and/or marketing your patented types of membranes."

42. The reasons given by Silvio Ponti for not having its subsidiary Sika-Trocal manufacture and market the membranes invented by Raphael Heifetz included (a) "Sika-Trocal mainly operates in the European flat roofing market;" (b) "95% of this single ply roofing market are thermal insulated roofs;" (c) "[t]he most used roofing concept in single ply is the mechanical fastened system or the ballasted roof (gravel ballast or roof garden);" (d) "[t]he fully bonded roofing system on concrete or wooden decks without thermal insulation is very seldom [encountered] in Europe," and (e) "[o]nce such a system is specified, a low price torch-on bituminous system is preferred instead." Nonetheless, Silvio Ponti stated that "we will keep in touch with you" and "[m]aybe there will be a different situation in the near future."

43. On information and belief, Sika AG acquired Sarnafil International AG in 2005.

44. Notwithstanding Raphael Heifetz's confidential disclosures to Sika AG and to Sarnafil International AG and Raphael Heifetz's patents in the United States and other countries , on information and belief employees of Sika AG and Sika Corporation decided to commercially manufacture a flexible waterproofing composite membrane with an integral foam backing that could be self-adhered directly to a concrete substrate or other approved substrates.

45. Raphael Heifetz's '080 patent was cited by the U.S. Patent and Trademark Office as prior art against at least Sika Technology AG's U.S. Patent Nos. 8,061,098 (filed November 13, 2007), 8,104,245 (filed December 24, 2008), and 8,122,664 (filed September 5, 2008). A co-

inventor of two of these patens is Brian J. Whelan, Sika Corporation's Executive Vice-President for Roofing and Flooring.

46. On information and belief, by 2010 there was sufficient market demand for a flexible waterproofing composite membrane with an integral foam backing that could be self-adhered directly to a concrete substrate or other approved substrates such that Sika began to sell its Sarnafil® G476 SA membranes worldwide.

47. At no time prior to the launch of its Sarnafil® G476 SA membranes did Sika AG or Sika Corporation contact Raphael Heifetz to request a license under any of his patents, such as the '080 patent.

48. On information and belief, until he retired at the end of 2016, Silvio Ponti was a Member of Sika AG's Group Management for the prior 14 years, was Sika AG's Deputy CEO since 2005, and was Sika's Head of Building Systems & Industry since 2013.

49. On June 8, 2016, counsel for Raphael Heifetz wrote to Silvio Ponti at Sika AG, to Christoph Ganz at Sika Corporation, and to Brian J. Whelan at Sika Sarnafil, Inc. to offer a license under, *inter alia*, the '080 patent. Counsel's letter specifically identified claim 37 of the '080 patent as a "particularly useful claim upon which to begin your analysis and review."

50. On July 20, 2016, Matti Pasanen, a Sika Technology attorney, responded saying that the technical solution disclosed in the '080 patent was "not interesting due to, among other reasons, the high production costs of the claimed membrane products" and stated that "we do not see any realistic opportunities in using the technical solutions in our business area."

51. Mr. Pasanen additionally noted that the "feature related to the composite membrane being able to withstand tensile forces resulting from constructional movements is, according to our analysis, of minor importance in this type of sealing device. Claim 37,

however, does not require that the composite membrane be able to withstand tensile forces resulting from constructional movement acting on the composite membrane.

52. On information and belief, Sika Corporation has made no changes in its Sarnafil® G476 SA membranes since July 20, 2016 and continues to sell those infringing membranes in the United States in willful infringement of the '080 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Raphael Heifetz prays that the Court enter judgment:

(a) Declaring that defendant has infringed the '080 patent;

(b) Declaring that defendant's infringement of the '080 patent has been willful;

(c) Enjoining defendant, preliminarily and permanently, from infringing the '080 patent;

(d) Awarding Raphael Heifetz damages adequate to compensate for defendant's infringement, including interest and costs;

(e) Awarding Raphael Heifetz treble damages based on the willfulness of defendant's infringement pursuant to 35 U.S.C. § 284;

(f) Awarding Raphael Heifetz his reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

(g) Granting Raphael Heifetz such other and further relief as the Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable.

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: | McCARTER & ENGLISH, LLP |
| Donald R. Dunner<br>Darrel C. Karl<br>Daniel G. Chung<br>FINNEGAN, HENDERSON, FARABOW,<br>GARRETT & DUNNER, L.L.P.<br>Washington, DC  20001-4413<br>Tel:  (202) 408-4000 | By: _s/ John E. Flaherty_<br>John E. Flaherty<br>Guillermo C. Artiles<br>Ravin R. Patel<br>Aya Cieslak-Tochigi<br>McCARTER & ENGLISH, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, New Jersey  07102<br>Tel:  (973) 622-4444<br>jflaherty@mccarter.com<br>gartiles@mccarter.com<br>rpatel@mccarter.com<br>acieslaktochigi@mccarter.com |
| Dated:  September 13, 2017 | *Attorneys for Plaintiff<br>Raphael Heifetz* |